IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **RYAN LEONARD, individually and on behalf of all others similarly situated,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ALL MY SONS BUSINESS DEVELOPMENT, LLC**<br>  Serve Registered Agent:<br>  Corporation Service Company<br>  251 Little Falls Drive<br>  Wilmington, Delaware 19808<br><br>**and**<br><br>**AMS GROUP HOLDCO, LLC**<br>  Serve Registered Agent:<br>  Corporation Service Company<br>  251 Little Falls Drive<br>  Wilmington, Delaware 19808<br><br>**and**<br><br>**RVNB HOLDINGS, LLC**<br>  Serve Registered Agent:<br>  Corporation Service Company<br>  251 Little Falls Drive<br>  Wilmington, Delaware 19808<br><br>    **Defendants.** | Case No. _____ |

## **COMPLAINT**

  Plaintiff Ryan Leonard, individually and on behalf of all others similarly situated, for his Complaint against Defendants All My Sons Business Development, LLC, AMS Group Holdco, LLC, and RVNB Holdings, LLC, states and alleges as follows:

## Nature of the Action

1. This lawsuit is filed as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, on behalf of all similarly situated persons employed by Defendants in the last three years as Inside Sales Manager, Inside Sales Representative or Virtual Sales Manager. Individuals working in these positions were paid on a salary basis and regularly required to work more than 40 hours per week without being compensated for overtime because they were misclassified as exempt under the FLSA.

## The Parties

2. Plaintiff Ryan Leonard ("Plaintiff") is a resident of Kansas City, Missouri. From August 27, 2018 to March 19, 2019, Plaintiff worked for All My Sons as an Inside Sales Manager in the office located at 2604 NE Industrial Drive, Kansas City, Missouri 64117.

3. Defendant All My Sons Business Development, LLC ("AMS") is a limited liability company organized under Delaware law with its principal place of business located at 2400 Old Mill Road, Carrollton, Texas 75007.

4. AMS maintains and controls a network of approximately 76 local moving operations across the country. Although many of the local operations are formed as separate limited liability companies, none are independently functioning entities. Instead, they are all characterized by AMS as "locations," "branches" or "offices," and AMS states on its website that its Carrollton, Texas headquarters offers a "central location" that puts AMS "right in the middle of the action, providing the perfect base of operations for all of our local offices from Portland to Miami and everywhere in between."

5. Defendant AMS Group Holdco, LLC ("AMS Group") is a limited liability company organized under Delaware law with its principal place of business located at 2400 Old Mill Road, Carrollton, Texas 75007.

6. Defendant RVNB Holdings, LLC ("RVNB") is a limited liability company organized under Delaware law. Documents filed by RVNB with the Texas Secretary of State represent that RVNB's principal place of business is located at 6505 West Park Boulevard, Suite 306, Plano, Texas 75093. This is not RVNB's actual place of business, but is the address UPS Store #3902. In violation of Texas law, RVNB maintains a "personal mailbox" at the UPS Store and misrepresents the UPS Store as its principal place of business when it does not actually conduct any business at that location. On information and belief, RVNB's true principal place of business is located at 2400 Old Mill Road, Carrollton, Texas 75007, where its officers, directors, members and managers have their offices and conduct their business.

7. AMS Group controls and operates a collection of businesses, including AMS and the local offices described above, and takes an active role in the management and direction of those businesses. AMS Group was formed in June 2017 to become the successor entity to RVNB after RVNB was sold to the private equity firm Sterling Investment Partners. Prior to this transition, RVNB played the same role as AMS Group in the control, operation, management and direction of AMS and the local offices.

8. AMS, AMS Group and RVNB are wholly owned subsidiaries of Residential Logistics Solutions, LLC, a company formed and controlled by Sterling Investment Partners. They share common officers, directors and office locations. At all relevant times, and as described in further detail below, they worked in concert to direct and operate their local moving offices as a single nationwide moving services company under the name "All My Sons Moving & Storage." Those entities are collectively referred to in this Complaint as "All My Sons."

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claim in this case arises under federal law.

10. This Court has personal jurisdiction over AMS, AMS Group and RVNB because each of those entities has conducted business, made contracts, and committed tortious acts in the State of Missouri during the relevant time period. Through their forum specific contacts, including the establishment of local moving operations and employment of Plaintiff and other putative class members, these entities have purposefully availed themselves of the privilege of conducting activities in the State of Missouri.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this judicial district and a substantial part of the events and omissions giving rise to the claim in this action occurred in this judicial district.

## General Allegations

12. All My Sons is a national moving company. Its website states that it provides "a wide variety of moving services all throughout the country" backed by "over four generations of moving experience." All My Sons is owned by Sterling Investment Partners, which describes the company on its website as "[t]he largest national non-franchise provider of local moving services in the United States, operating 63 locations across 25 states."

13. All My Sons currently has approximately 76 local moving operations across the country, many of which are formed as a separate limited liability companies. This includes the Kansas City location at which Plaintiff worked, which is designated as All My Sons Moving & Storage of Kansas, LLC. None of the local moving operations are independently functional; they are all part of the national moving company that conducts business as All My Sons Moving & Storage.

14. All My Sons controls, manages and directs the employment practices and procedures of each local moving office to create a uniform national operation. This includes identical workforce structure at each local office, with standard positions at each location having uniform job duties and responsibilities established by All My Sons. The company uses standardized training programs for all management-level employees, which are administered by AMS and conducted at AMS' business development office in Dallas, Texas. Human resources functions are centralized and performed through the national organization, including processing of job applications, hiring and firing of management-level employees, determination of legal compliance issues (including classifications of exempt and non-exempt positions for purposes of the FLSA), development and implementation of policies and procedures (including those outlined in the All My Sons Employee Handbook), and performance of other day-to-day human resources tasks. Risk Management functions also are centralized and performed through the national organization.

15. All My Sons controls, manages and directs the business operations of each local moving office to create a uniform national operation. This includes what Sterling Investment Partners describes as a "business model built around an industry-leading technology platform" that "is revolutionizing the residential moving experience." All My Sons does not use a franchise structure—its local offices are not independently owned and have no meaningful ability to deviate from the established operational policies of the national organization.

16. All My Sons controls, manages and directs the finances of each local moving office to create a uniform national operation. This includes employee rate-of-pay determinations, employee payroll processing, employee bonus determinations based on sales goals, company accounting, and other similar functions. The local moving offices are not financially independent,

but function as supplemental parts of a larger economic unit completely and utterly dominated by the national organization.

17. Other significant functions pertaining to all local offices are also performed by All My Sons at a national level. For example, employees in the local offices are required as a condition of employment to execute a Non-Solicitation and Non-Disclosure Agreement with AMS and AMS Group. The national organization also operates a call center in Carrollton, Texas to handle business-related matters for the local offices, uses "virtual" sales managers located in Carrollton, Texas to work remotely on behalf of local offices when necessary, and employs claims service specialists and claims specialists to address customer complaints, property damage claims and other similar issues arising out of work performed by the local offices.

18. All My Sons deliberately designed and implemented a uniform national operation as part of its business strategy. Sterling Investment Partners explains that this design allows All My Sons to leverage its "significant scale and technology advantages to drive best-in-class marketing, customer acquisition, workforce management, service execution and customer satisfaction." Sterling Investment Partners also explains that this design provides competitive advantages for All My Sons in an otherwise "highly fragmented industry."

19. AMS is an employer for purposes of the FLSA. As a matter of economic reality, AMS had the direct power to control significant aspects of Plaintiff's employment as an Inside Sales Manager. In particular, AMS:

    a. had the power to hire and fire Plaintiff;

    b. supervised and controlled Plaintiff's work schedule and the conditions of his employment by: (i) establishing the daily work schedule and minimum number of hours Plaintiff was required to work on a weekly basis; (ii) determining Plaintiff's job duties and responsibilities and directing his day-to-day activi-

ties in performing those duties and responsibilities; (iii) directing Plaintiff to complete his job training through a standardized program created and administered by AMS; (iv) conducting regular conference calls with Plaintiff and all other sales personnel to monitor job performance and set future expectations; (v) conducting monthly one-on-one calls with Plaintiff to discuss job performance and sales goals; (vi) creating, implementing and enforcing workplace policies and procedures outlined in the All My Sons Employee Handbook; (vii) managing all human resources functions; and (viii) requiring Plaintiff to execute a Non-Solicitation and Non-Disclosure Agreement with AMS as a condition of his employment;

c. processed employee payroll, established policies and procedures regarding employee pay in the Employee Handbook, and determined the rate and method of Plaintiff's payment, including (i) his base salary and benefits, (ii) his sales goals and attendant bonus eligibility, and (iii) his exempt status for purposes of the FLSA; and

d. maintained Plaintiff's employment records through its centralized human resources department.

20. AMS Group also is an employer for purposes of the FLSA because it has the direct and/or indirect power to control significant aspects of Plaintiff's employment as an Inside Sales Manager through some or all of the means outlined in the preceding paragraphs. AMS Group exercises its power to control Plaintiff's employment by maintaining interrelated operations, common management, centralized control, and common ownership and financial control with AMS over All My Sons. AMS Group's direct involvement in the operations of All My Sons and control of Plaintiff's employment is demonstrated by the fact that it is a named party to the

Non-Solicitation and Non-Disclosure Agreement with Plaintiff and is identified as a point of contact on employment-related issues in the All My Sons Employee Handbook.

21. During at least a portion of the relevant time period in this case before the succession by AMS Group, RVNB also was an employer for purposes of the FLSA in the same manner as AMS Group outlined in the preceding paragraphs.

22. Plaintiff was employed by All My Sons as an Inside Sales Manager. In that role, Plaintiff worked exclusively inside the office and was responsible primarily for booking moving jobs by contacting leads via telephone, text or email.

23. All My Sons paid Plaintiff on a salary basis and classified him as exempt from overtime pay under FLSA regulations.

24. Plaintiff's work as an Inside Sales Manager did not meet the requirements for the executive exemption to the overtime requirements of the FLSA. Plaintiff had no responsibility for managing the enterprise or a customarily recognized department or subdivision of the enterprise, and he did not direct the work of any other employees. Plaintiff had no hiring/firing authority, and his suggestions and recommendations as to personnel matters were never solicited or given particular weight.

25. Plaintiff's work as an Inside Sales Manager did not meet the requirements for the administrative exemption to the overtime requirements of the FLSA. Plaintiff's work was not directly related to the management or general business operations of All My Sons or its customers, but involved only the performance of the day-to-day production tasks related to sales of All My Sons marketplace offerings. Plaintiff had no meaningful ability or opportunity to exercise discretion or independent judgment with respect to matters of significance; his job responsibilities were designed to be performed identically to those of other Inside Sales Managers at all other All My Sons offices, and his work was tightly controlled by the procedures, rules and regula-

tions communicated to him through training, an employee handbook and other company materials (such as pricing lists) that directed and controlled his job performance.

26. None of the other FLSA overtime exemptions apply to Plaintiff because: he did not perform work in a field of science or learning or in a recognized field of artistic or creative endeavor; he was not employed as a computer systems analyst, computer programmer, software engineer or other similarly skilled worker; he did not perform sales work outside the office; and he did not qualify as a highly compensated employee.

27. As an Inside Sales Manager, Plaintiff was required to work at least 50 hours per week. His regular work schedule was 8:00 am to 6:00 pm Monday through Friday and 9:00 am to 3:00 pm on Saturday, with a one-hour lunch break each day. Plaintiff sometimes worked more than the minimum 50-hour requirement, including regularly working through his purported lunch break. Because he was misclassified by All My Sons as exempt from overtime pay, Plaintiff was not required under the All My Sons Employee Handbook to keep time records or report the hours that he worked each week.

28. Although Plaintiff regularly worked significantly more than 40 hours per week, he was never paid overtime because All My Sons incorrectly and illegally classified him as exempt from overtime pay under FLSA regulations.

29. Plaintiff has suffered financial injury because All My Sons deprived him of substantial overtime pay to which he was legally entitled.

**Collective Action Allegations**

30. Plaintiff brings this collective action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of:

> All current and former Inside Sales Managers, Inside Sales Representatives and Virtual Sales Managers employed by All My Sons at any time during the three

years preceding the filing of this lawsuit who have not been paid overtime for all services performed in excess of forty hours per week because they were classified as exempt from the overtime pay requirements of the FLSA.

31. In the same manner alleged above with respect to Plaintiff, AMS, AMS Group and RVNB acted as employers for purposes of the FLSA with respect to all members of the putative collective action.

32. All members of the putative collective action are similarly situated in that each person was compensated on a salary basis and subjected to the same illegal pay practices under a uniform company policy incorrectly determining and unlawfully applying FLSA overtime exemptions to deprive employees of overtime pay.

33. Like Plaintiff, all Inside Sales Managers, Inside Sales Representatives and Virtual Sales Managers perform work exclusively inside the office and consisting primarily of booking moving jobs by contacting leads via telephone, text or email. Other than a superficial difference in job titles, the three positions are indistinguishable.

34. As alleged above, the inside sales positions held by the members of the putative collective action do not qualify for any FLSA overtime exemption and employees in these positions regularly work more than 40 hours per week according to a set schedule without being paid overtime. All employees in these positions have suffered financial injury because All My Sons deprived them of substantial overtime compensation to which they were entitled.

35. FLSA regulations make clear that employees whose primary duties involve inside sales and business production cannot be classified as exempt executive or administrative personnel. *See, e.g.*, 29 C.F.R. § 541.106(a); *id.* § 541.201(a); *see also* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22146 (Apr. 23, 2004) (noting that "[t]he Department [of Labor] agrees that

employees whose primary duty is inside sales cannot qualify as exempt administrative employees" and that "[a]n employee whose primary duty is inside sales is not exempt" from FLSA overtime requirements).

36. All My Sons is aware of the specific regulatory requirements and limits of FLSA overtime exemptions. The All My Sons Employee Handbook describes the regulations governing overtime exemptions, notes that all requirements must be satisfied for the exemptions to apply, and acknowledges the importance of correctly determining and applying the exemptions. Despite its appreciation of these legal requirements, All My Sons maintained a company-wide practice of illegally classifying Inside Sales Managers, Inside Sales Representatives and Virtual Sales Managers as exempt from overtime compensation. In doing so, All My Sons knowingly, willfully and recklessly violated the FLSA by failing to pay its employees proper overtime compensation for all hours worked over 40 per week.

37. This action is fairly, efficiently and appropriately maintained as an opt-in collective action under the FLSA. All members of the putative collective action are similarly situated, will be entitled to similar relief, and can readily be identified in employment records maintained by All My Sons. The Court should certify this matter as a collective action and order appropriate notice to be sent to all potential members so that they may choose whether to give consent in writing to become parties in this case.

### Count I
### Individual and Collective Action for
### Violation of the Fair Labor Standards Act

38. Plaintiff incorporates by reference all paragraphs and allegations in the Complaint as though fully set forth herein.

39. At all times relevant to this action, All My Sons employed Plaintiff and scores of other individuals as Inside Sales Managers, Inside Sales Representatives and Virtual Sales Man-

agers at locations nationwide. All of the individuals employed in these positions performed similar work and were subject to the same compensation policy that misclassified them as exempt for purposes of overtime pay.

40. In their work for All My Sons, Plaintiff and all members of the putative collective action were engaged in commerce and/or employed by an enterprise engaged in commerce that had annual gross sales of not less than $500,000.

41. All My Sons failed to pay Plaintiff and all members of the putative collective action overtime pay at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of 40 in one or more workweeks. This was in violation of the FLSA. *See* 29 U.S.C. § 207(a).

42. The conduct of All My Sons with respect to Plaintiff and all members of the putative collective action constitutes a willful violation of the FLSA for purposes of expanding the statute of limitations to three years. *See* 29 U.S.C. § 255(a).

43. Plaintiff and all members of the putative collective action are entitled to damages in the amount of all respective unpaid overtime compensation at a rate of one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, plus liquidated damages in an equal amount, reasonable attorneys' fees and costs of the action as provided in 29 U.S.C. § 216(b).

### **Prayer for Relief**

Plaintiff, on behalf of himself and all members of the putative collective action, prays for the following relief:

A. Certification of a collective action on behalf of all Inside Sales Managers, Inside Sales Representatives and Virtual Sales Managers employed by All My Sons in the last three years, with prompt issuance of notice to all such persons apprising

  them of the pendency of this action and permitting them to assert timely FLSA claims by filing individual consents in writing to become parties to this action pursuant to 29 U.S.C. § 216(b).

B.  Judgment that Plaintiff and those similarly situated are entitled to the overtime protections of the FLSA, and judgment against All My Sons for violation of the overtime provisions of the FLSA in illegally classifying Plaintiff and the members of the collective action as exempt from overtime compensation and failing to pay them one and one-half times the regular rate of pay for all hours worked in excess of 40 per workweek.

C.  Judgment that All My Sons willfully violated the FLSA by knowingly or recklessly misclassifying Plaintiff and the members of the collective action as exempt from overtime compensation and failing to pay them one and one-half times the regular rate of pay for all hours worked in excess of 40 per workweek.

D.  An award to Plaintiff and all members of the collective action for unpaid overtime wages and liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, costs of this action, and for all such further relief as the Court may find just and equitable under the circumstances.

### **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

- 13 -
Case 4:19-cv-00374-GAF Document 1 Filed 05/10/19 Page 13 of 14

Respectfully submitted,

KRIGEL & KRIGEL, P.C.

By: */s/ Ivan L. Nugent*
    Lara Krigel Pabst    MO #62208
    Ivan L. Nugent    MO #62148
    4520 Main Street, Suite 700
    Kansas City, Missouri 64111
    Telephone: 816.756.5800
    Facsimile: 816.756.1999
    lpabst@krigelandkrigel.com
    inugent@krigelandkrigel.com

-and-

SHANK & MOORE, LLC

By: */s/ Stephen J. Moore*
    Stephen J. Moore    MO #59080
    1968 Shawnee Mission Pkwy, Suite 100
    Mission Woods, Kansas 66205
    Telephone: 816.471.0909
    Facsimile: 816.471.3888
    sjm@shankmoore.com

***Attorneys for Plaintiff Ryan Leonard***